STATE of South Dakota, Plaintiff and Appellee,

v.

Robert L. SHULL, Defendant and Appellant.

No. 13774.

Supreme Court of South Dakota.

Considered on Briefs Jan. 20, 1983.

Decided March 16, 1983.

Jon R. Erickson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Catherine G. Ortner of Ortner & Ortner, Hot Springs, for defendant and appellant.

FOSHEIM, Chief Justice.

Defendant Robert Shull was arrested as a result of a poaching investigation and charged with three counts of "unlawful hunting or possession of big game or parts thereof (SDCL 41–8–2 and 41–8–18) in that he did possess parts of a big game animal . . . during a closed season." Counts I and III charged possession of deer antlers, Count II elk antlers. A jury acquitted defendant on Count I but convicted him on Counts II and III. The guilty verdicts read: "We . . . find the Defendant . . . guilty of unlawful hunting or possession of big game . . . as charged in the Information." The trial court sentenced defendant on Count II "to 1 year in Fall River County Jail to commence upon his release from the State Penitentiary. . . . For count 3, the defendant is also sentenced to 1 year in the Fall River County Jail to commence upon completion sentence [sic] of count 2." Defendant appeals on separate theories relating to the information, the trial and the sentence. We affirm in part and remand in part.

Prior to trial defendant moved to dismiss the information on the ground that it did not describe a public offense.[1] SDCL 23A–8–2(5).[2] Defendant renewed this ob-

1. Defendant also moved for dismissal because the South Dakota Game, Fish and Park's Department widely publicized its sting operation, in which defendant was arrested, and thereby prevented him from receiving a fair trial. Defendant also raises this argument on appeal, however he cites no authority to support this claimed error. The failure to cite supporting authority is a violation of SDCL 15–26A–60(6) and the issue is thereby deemed waived. See Graham v. State, 328 N.W.2d 254 (S.D.1982).

2. SDCL 23A–8–2(5) reads: Upon motion of a defendant made pursuant to subdivision (1), (2) or (3) of § 23A–8–3, the court must dismiss an

jection in his motion for a new trial and for arrest of judgment. Defendant argues that under the statutes cited in the information, SDCL 41–8–2 and SDCL 41–8–18, it is not a crime to possess parts of a big game animal. At the time of the alleged crimes, July and August 1981, these statutes read:

> SDCL 41–8–2: Except as otherwise expressly provided, no person shall pursue, hunt, take, possess, shoot at, kill, wound, or capture any big game animal within the limits of this state at any time. SDCL 41–8–18: Any person violating any of the provisions of § 41–8–2 ... is guilty of a Class 1 misdemeanor for each big game animal or any part thereof, taken, caught, killed, sold, offered or exposed for sale, had in possession or had in possession with intent to sell .... Upon conviction of any person for hunting or taking big game ... during a closed season ... the court shall ... impose a fine of not less than two hundred and fifty dollars for each animal involved and that person shall be required to serve a minimum of three days in the county jail.

We conclude that when these statutes are read together, as charged, the "big game animal or any part thereof" language in SDCL 41–8–18 indicates the Legislature intended that possession of parts of a big game animal during the closed season is a crime. *Cf.* 16 U.S.C.A. § 668.[3]

■ We next turn to claimed trial errors. Defendant argues that because of extensive pretrial publicity, the trial court erred in restricting the scope of the voir dire and in denying his motion for individual voir dire examination.

When defendant commenced questioning prospective jurors about pretrial publicity, the court interrupted:

> I am going to object to that. You can ask if—I am not going to allow you to go into detail at this point in time. The

question is whether or not as a result of the pretrial publicity the witnesses—the prospective jurors—have formed an opinion that will require evidence to set aside, as it applies to this specific case.

However, defense counsel did not restrict her questions on pretrial publicity to the court's confines. She thoroughly questioned all jurors along this line and, except for the above quoted directive, the trial judge did not again restrict her questioning.

In *State v. Pickering,* 245 N.W.2d 634 (S.D.1976), we recognized that a significant amount of potentially prejudicial pretrial publicity relating to the defendant or the crime charged can form a basis for individual voir dire. However, we later held that even though a case is surrounded by massive publicity and involves controversial issues, individual voir dire is not a right but a procedure permitted in the discretion of the trial court. *State v. Bad Heart Bull,* 257 N.W.2d 715 (S.D.1977). The trial judge's denial of defendant's motion for individual voir dire was qualified by his statement that he would change his ruling if it appeared necessary. During the course of the examination, defendant renewed his motion for individual voir dire. It was denied.

The bulk of the arrests in the poaching sting operation were made on December 1, 1981. Defendant was tried on March 1, 1982. For his pretrial publicity showing defendant submitted tapes of radio interviews from December 7, 1981, to December 11, 1981, concerning the investigation; press releases from the Game Fish & Parks Department from December 1, 1981, to January 29, 1982; and 22 news clippings from three area newspapers.

Although the transcript of the voir dire shows that almost all the prospective jurors had heard or read something about the undercover poaching investigation, we do not

---

indictment or information in any of the following cases:

> (5) When it does not describe a public offense[.]

**3.** 16 U.S.C.A. § 668 provides, in part: "Whoever ... without being permitted to do so ...

shall knowingly or with wanton disregard for the consequences of his act take, possess, sell ... any bald eagle ... or any part ... thereof ... shall be fined not more than $5,000 or imprisoned not more than one year or both[.]"

believe the trial court abused its discretion by denying individual voir dire. The selected jurors all professed an ability and willingness to ignore pretrial publicity, to give defendant the full benefit of the presumption of innocence, and to judge him solely on the evidence received according to the instructions of the court.

■ The next issue is whether the evidence was sufficient to support the verdicts finding defendant "guilty of unlawful hunting or possession of big game." The trial court gave the following essential elements instruction, objected to by the state but not by defendant:

The essential elements of the offenses charged in the information, each of which the state must prove beyond a reasonable doubt before you can find the defendant guilty thereof, are:

1. That the defendant at the times and places alleged in the information unlawfully possessed a big game animal during a closed season; and

2. That the defendant at the time and places alleged in the information unlawfully had in his possession parts of said big game animal during a closed season.

The court also gave Instruction # 11, proposed by defendant, which stated:

There is a presumption created by statute that if a defendant is in possession of parts of a big game animal, he is presumed to have pursued, hunted, taken, possessed, shot at, killed, wounded or captured such big game animal.

It is for the jury to determine if the presumed fact exists. In other words, the jury may regard the basic fact of possession of parts of big game, as sufficient evidence that the defendant pursued, hunted, took, possessed, shot at, killed, wounded or captured such big game, but the jury is not required to so find. The existence of the presumed fact must be proven beyond a reasonable doubt.

(Defense counsel contended that SDCL 41–8–18 gave rise to this presumption.) Defendant did not object to the verdict forms.

Failure to object to instructions makes them the law of the case. *Nebraska Electric Generation and Transmission Cooperative, Inc. v. Walking,* 90 S.D. 253, 241 N.W.2d 150 (1976); *Application of Thwing,* 85 S.D. 351, 182 N.W.2d 308 (1970); SDCL 15–6–51(b).

■ The test for reviewing a denial of a motion for a new trial based on insufficient evidence is "whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Cook,* 319 N.W.2d 809, 811 (S.D.1982) (citation omitted). In applying this standard, we "must accept that evidence and the most favorable inferences that can be drawn therefrom in support of the verdict." *Id.*

■ Defendant admitted he possessed the antlers referred to in Counts II & III. He did not urge an entrapment defense, instead testifying that he came by the antlers legally (bought one set from a friend, and severed the other from a road-kill). Undercover agent Tim Kuca testified that defendant told him he killed the elk which is the basis of Count II. Therefore, even absent Instruction # 11's presumption, the evidence appears sufficient to convict on Count II.

However, the testimony as to Count III from Mr. Kuca was that when defendant told him he had a set of antlers for sale, "[w]e mentioned the fact that the antlers were skinned up, possibly from a road-kill, that type of thing." Kuca testified that defendant never said where he got the antlers until December 1st (the day of defendant's arrest) when defendant told him they "came off a Wyoming road-kill" on private property. Defendant's testimony was that these antlers came from a dead deer he found lying on the road and which he thought was probably hit by a logging truck. The jury apparently did not believe defendant's explanation of how he came by the antlers and, even though the State did not offer evidence that defendant hunted or possessed the deer from which the antlers came, found defendant guilty. Such a find-

ing was authorized by operation of the presumption in Instruction # 11. Once defendant admitted possession of the antlers that presumption, according to the instruction, was sufficient to support the verdict. *Walking, supra; Thwing, supra;* SDCL 15–6–51(b).

 Defendant next claims numerous errors in admitting evidence of defendant's past wrongs or crimes, arguing that the evidence was offered and admitted in the State's case-in-chief as proof of defendant's character, in violation of SDCL 19–12–5.[4] This court recognizes that the admission of evidence of other wrongs or crimes can constitute reversible error. *State v. Webb,* 251 N.W.2d 687 (S.D.1977). Our standard of review is whether "[a]ny error . . . affect[s] substantial rights" of the accused, SDCL 23A–44–14, so that there is a "reasonable possibility that such testimony contributed to appellant's conviction[.]" *State v. Shell,* 301 N.W.2d 669, 671 (S.D.1981); *State v. Johnson,* 87 S.D. 43, 202 N.W.2d 132 (1972).[5] In this case, we are convinced that if the trial court erred, there is no reasonable possibility that it contributed to the guilty verdicts. We reach this conclusion based on Instruction # 11, *supra.* If anything affected substantial rights of defendant, it appears to be that instruction, proposed by defendant, allowing the jury to convict solely on evidence of possession, which defendant freely admitted. *See State v. Vierck,* 23 S.D. 166, 120 N.W. 1098 (1909).

Defendant next argues that the trial court's sentence is erroneous. At the time of defendant's trial and conviction he was serving a sentence in the South Dakota State Penitentiary on a 1981 conviction of

receiving stolen property. Defendant's sentence on Count II was ordered to commence upon release from the penitentiary on the stolen property conviction. This is contrary to our interpretation of SDCL 22–6–6.1.[6] The Count II sentence must commence on the date of sentencing and run concurrently with the previous sentence defendant was then serving. *State v. Wilson,* 322 N.W.2d 866 (S.D.1982); *State v. Flittie,* 318 N.W.2d 346 (S.D.1982).

We affirm the judgment of conviction and remand for re-sentencing.

All the Justices concur.

---

**4.** SDCL 19–12–5 reads: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**5.** The trial court instructed that the other crime evidence was offered to prove intent and could not be considered for any other purpose. Al-

though we do not believe defendant's intent was in issue, defendant's objection to this instruction was that the conviction was remote. SDCL 15–6–51(b).

**6.** SDCL 22–6–6.1 reads: If a defendant has been convicted of two or more offenses before judgment on either, the judgment may be that the imprisonment on either one may commence at the expiration of the imprisonment upon any other of the offenses.